IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**TERESITA J. DUMAIS,**

    **Plaintiff,**

vs.                                                             No. CIV 00-0255 MV/LCS

**AMERICAN GOLF CORPORATION
d/b/a PARADISE HILLS GOLF CLUB,
and WILLIAM WINKLER,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendants' Motion to Compel Arbitration and Request for Immediate Stay (Doc. 8), filed May 18, 2000. The Court, having reviewed the parties submissions, relevant authorities and being otherwise fully advised, finds that Defendants' motion is not well-taken and should be **DENIED**.

In 1996, American Golf Corporation's (AGC) hired Plaintiff to work as a service employee in the lounge of its Paradise Hills Golf Club. Plaintiff was subsequently promoted to Banquet Manager, reporting directly to the General Manager. Plaintiff alleges that the General Manager, Defendant William Winkler (Winkler) subjected her to a campaign of sexual harassment until her constructive discharge. In her Complaint, Plaintiffs asserts claims for sexual harassment and constructive discharge under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and a supplemental state law claim for retaliatory discharge against AGC. Plaintiff also asserts supplemental state law claims for intentional infliction of emotional distress and prima facie

tort against both AGC and Winkler.

Defendants have moved to compel arbitration based on two documents signed by Plaintiff on July 25, 1996. The first document states that "I acknowledge that I have read, understand, and will use, the "We Can Work It Out" program when I am eligible; that I understand and agree to the Arbitration provision on the reverse side of this form . . ." (Defs. Ex. A.) The second document is a "New Co-Worker Authorization & Acknowledgment Form" acknowledging that Plaintiff received, understood and would comply with the Co-Worker Alliance Handbook and AGC's "We Can Work It Out Program."[1] (Defs. Ex. B at 1.) Immediately following the "We Can Work It Out Program" portion of the Co-Worker Alliance Handbook is a paragraph captioned "Arbitration," providing in pertinent part:

> I agree that any claim of unlawful harassment or discrimination or claims of wrongful discharge, arising out of my employment with AGC, including public policy claims, contract claims and claims involving any applicable Federal, State, or Local statute, ordinance or regulation relating to the termination of my employment, employment discrimination, harassment or retaliation, will be resolved exclusively by final and binding arbitration and not by court action. I may begin the arbitration process by delivering a written request for arbitration to AGC's Human Resources Department . . . . I acknowledge that am knowingly and voluntarily waiving my right to pursue such claims in court and instead will pursue them through arbitration. If I proceed with arbitration, I agree that any such arbitration will be conducted using the 1989 Model Employment Arbitration procedures of the American Arbitration Association ("AAA"). . . . This arbitration shall be the exclusive means of resolving any dispute(s) listed in this agreement and no other action will be brought in any court or administrative forum. If any court of competent jurisdiction declares that any part of this Arbitration Agreement is illegal, invalid or unenforceable, such a declaration will not affect the legality, validity

---

[1]Plaintiff asserts that she never received a copy of the Co-Worker Alliance Handbook and AGC's "We Can Work It Out Program." (Pl. Aff. at ¶5.) This factual dispute is not relevant to the current analysis.

>   or enforceability of the remaining parts of the Agreement, and the illegal, invalid or unenforceable part will no longer be part of this Agreement.

(Defs. Ex. B at 4.)

The 1989 AAA procedures require that the filing party pay a non-refundable administrative fee of $300.00 and $75.00 for each second or subsequent hearing and that all expenses of arbitration be borne equally by the parties, unless they agree otherwise or the arbitrator directs otherwise in the award. (Pl. Ex. 2 at 10.) Plaintiff has submitted an affidavit stating that payment of the arbitration costs pursuant to the agreement would impose a severe financial hardship upon her. (Pl. Aff. at ¶ 12-13.)

Congress' purpose in enacting the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, was "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA constitutes a congressional declaration of a liberal federal policy favoring arbitration agreements. *See Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983). Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.*, 460 U.S. at 24-25. Employment discrimination claims arising under federal statutes are subject to mandatory arbitration upon a valid agreement to arbitrate. *See Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1487 (10th Cir. 1994).

Before a federal judge may stay proceeding pending arbitration, however, he must be satisfied that the issues involved in the suit are referable to arbitration under the agreement between the parties. *See* 9 U.S.C. § 3. "[T]he first task of a court asked to compel arbitration of a dispute is to

determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). As in any contract case, the parties' intent is controlling with regard to whether they agreed to arbitrate a particular dispute, and determining intent is a question of law for the court. *See Armijo v. Prudential Ins. Co.*, 72 F.3d 793, 797 (10th Cir. 1995) (citing *Mitsubishi*, 473 U.S. at 626). State law principles of contract formation govern the determination of whether an agreement to arbitrate has been reached. *See Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997).

Plaintiff argues, *inter alia*, that the arbitration agreement is unenforceable because it requires her to pay fees and to equally share the cost of the arbitration. Controlling Tenth Circuit precedent holds that an arbitration agreement requiring an employee to pay a portion of the costs is unenforceable. *See Shankle v. B-G Maintenance Management of Colorado, Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999). In *Shankle*, a case brought under Title VII, the ADA and the ADEA, the Tenth Circuit interpreted an arbitration agreement between a custodian and his former employer, which required the custodian to pay one-half of the arbitrator's fees. *See id.* at 1234. Noting that the plaintiff in *Shankle* could not afford to pay an arbitrator $1,875 to $5,000 to resolve his claims, the Tenth Circuit determined that the arbitration agreement undermined the remedial and deterrent functions of the anti-discrimination statutes because it failed to provide an accessible forum for the vindication of statutory rights. *See id*. at 1234-35. In the instant case, Plaintiff has submitted an affidavit stating that payment of the arbitrator costs pursuant to the agreement would impose severe financial hardship upon her. As was the case in *Shankle*, enforcement of the arbitration agreement would hinder Plaintiff's access to a forum for resolution of her rights under Title VII.

In their Reply, Defendants offer to pay the full cost of arbitration. (Defs. Reply at 9.)

4

However, it is a well-established principle that the courts will not rewrite a contract for the parties. *See Casias v. Dairyland Ins. Co.*, 126 N.M. 772, 776, 975 P.2d 385, 389 (Ct. App.1999) (citing *Christmas v. Cimarron Realty Co.*, 98 N.M. 330, 332, 648 P.2d 788, 790 (1982)). The Court will decline Defendants' request to reform the arbitration agreement in the midst of litigation.

The arbitration agreement contains a savings clause, providing that "[i]f any court of competent jurisdiction declares that any part of this Arbitration Agreement is illegal, invalid or unenforceable, such a declaration will not affect the legality, validity or enforceability of the remaining parts of the Agreement, and the illegal, invalid or unenforceable part will no longer be part of this Agreement." (Defs. Ex. B at 4.)  New Mexico law recognizes the severability of contracts. *See C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 508, 817 P.2d 238, 242 (1991); *Arrow Gas Co. of Dell City, Tex. v. Lewis*, 71 N.M. 232, 238, 377 P. 2d 655, 661 (1962); *City of Santa Fe v. First Nat. Bank in Raton*, 41 N.M. 130, 139, 65 P.2d 875, 884 (1937); *Fancher v. Bd. of Comm'rs*, 28 N.M. 179, 207, 210 P. 237, 248 (1922).  Moreover, the United States District Court of Colorado has held that a savings clause permits severance of an unenforceable cost sharing provision.  *See Fuller v. Pep Boys, Inc.*, 88 F. Supp. 2d 1158, 1162 (D. Colo. 2000).  However, severance of the cost sharing provisions in this case would yield an agreement with no allocation of costs.  With no provision for the payment of costs, Plaintiff's ability to vindicate her statutory rights may be hindered by the imposition of costs.  *See Randolph v. Green Tree Financial Corp.*, 178 F.3d 1149, 1158 (11th Cir. 1999), *cert. granted*, 120 S. Ct. 1552, 68 U.S.L.W. 3629 (U.S. Apr. 3, 2000) (No. 99-1235).  Because substantial costs may be imposed upon Plaintiff even if the cost sharing provision is severed, the arbitration agreement is unenforceable under *Shankle*.

The United States Supreme Court has granted certiorari on the issue of whether an

5

arbitration agreement that was silent on the issue of costs is unenforceable because Plaintiff's ability to vindicate statutory rights might be undermined.  *See Green Tree Financial Corp. v. Randolph*, 120 S. Ct. 1552, 68 U.S.L.W. 3629 (U.S. Apr. 3, 2000) (No. 99-1235).  Oral argument is scheduled for October 3, 2000.  Defendant may raise the validity of the arbitration agreement in light of any change in the law.  As the law now stands, however, the arbitration agreement is void and unenforceable.

**WHEREFORE,**

**IT IS HEREBY ORDERED** that Defendants' Motion to Compel Arbitration and Request for Immediate Stay (Doc. 8), filed May 18, 2000, is **DENIED**.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**