IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**TERESITA J. DUMAIS,**

    **Plaintiff,**

vs.                                               No. CIV 00-0255 MV/LCS

**AMERICAN GOLF CORPORATION**
**d/b/a PARADISE HILLS GOLF CLUB,**
**and WILLIAM WINKLER,**

    **Defendants.**

### MAGISTRATE JUDGE'S PRELIMINARY FINDINGS AND ORDER SETTING ORAL ARGUMENT ON PRELIMINARY FINDINGS AND EVIDENTIARY HEARING ON PARAGRAPHS 22 AND 23 OF PRELIMINARY FINDINGS

**THIS MATTER** came before the Court upon Defendants' Motion to Compel Arbitration and Request for Immediate Stay (Doc. 8), filed May 18, 2000, and the parties' Supplemental Briefs Regarding the Ramifications of *Green Tree Financial Corp. v. Randolph,* 121 S.Ct. 513 (2000) on the Motion to Compel Arbitration (Docs. 52, 54, 55, 56). On March 28, 2001, United States District Judge Martha Vazquez referred this Motion pursuant to 28 U.S.C. § 636 (b)(1)(B). The United States Magistrate Judge, having considered the Motion, memoranda, briefs submitted by the parties, and the applicable law, finds that final proposed findings and recommended disposition on this Motion should be deferred until after oral argument and an evidentiary hearing.

### PRELIMINARY FINDINGS

    1.        Plaintiff asserts that she went to work for American Golf Corporation's (AGC) as a

service employee in the lounge of its Paradise Hills Golf Club on May 3, 1996. (Pl. Aff. at ¶ 2.) Defendants claim that Plaintiff was hired on July 25, 1996. Plaintiff was subsequently promoted to Banquet Manager, reporting directly to the General Manager. Plaintiff alleges that the General Manager, Defendant William Winkler (Winkler) subjected her to a barrage of sexual harassment until her constructive discharge. In her Complaint, Plaintiffs asserts claims for sexual harassment and constructive discharge under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and a supplemental state law claim for retaliatory discharge against AGC. Plaintiff also asserts supplemental state law claims for intentional infliction of emotional distress and prima facie tort against both AGC and Winkler.

2. Defendants moved to compel arbitration based on two documents signed by Plaintiff on July 25, 1996. The first document states that "I acknowledge that I have read, understand, and will use, the "We Can Work It Out" program when I am eligible; that I understand and agree to the Arbitration provision on the reverse side of this form . . ." (Defs. Ex. A.) The second document, entitled "New Co-Worker Authorization & Acknowledgment Form," acknowledges that Plaintiff received, understood and would comply with the Co-Worker Alliance Handbook and AGC's "We Can Work It Out Program." (Defs. Ex. B at 1.)

3. Immediately following the "We Can Work It Out Program" portion of the Co-Worker Alliance Handbook is a paragraph captioned "Arbitration," providing in pertinent part:

> I agree that any claim of unlawful harassment or discrimination or claims of wrongful discharge, arising out of my employment with AGC, including public policy claims, contract claims and claims involving any applicable Federal, State, or Local statute, ordinance or regulation relating to the termination of my employment, employment discrimination, harassment or retaliation, will be resolved exclusively by final and binding arbitration and not by court action. I may begin

>the arbitration process by delivering a written request for arbitration to AGC's Human Resources Department . . . . I acknowledge that am knowingly and voluntarily waiving my right to pursue such claims in court and instead will pursue them through arbitration. If I proceed with arbitration, I agree that any such arbitration will be conducted using the 1989 Model Employment Arbitration procedures of the American Arbitration Association ("AAA"). . . . This arbitration shall be the exclusive means of resolving any dispute(s) listed in this agreement and no other action will be brought in any court or administrative forum. If any court of competent jurisdiction declares that any part of this Arbitration Agreement is illegal, invalid or unenforceable, such a declaration will not affect the legality, validity or enforceability of the remaining parts of the Agreement, and the illegal, invalid or unenforceable part will no longer be part of this Agreement.

(Defs. Ex. B at 4.)

4. The Co-Worker Alliance Handbook further states that "I understand that this handbook superseded any and all prior handbook and that except for employment at-will and the agreement to arbitrate as provided for in this handbook, AGC reserves the right to at any time change, delete, modify, or add to any of the provisions contained in this handbook at its sole discretion, by giving written notice to us." (Pl. Ex. 1 at p. 6.) At the back of the Co-Worker Alliance Handbook is an "Acknowledgment" stating that "I further understand that the Company reserves the right to amend, supplement, rescind or revise any policy, practice, or benefit described in this handbook – other than employment at-will provisions – as it deems appropriate." (Pl. Ex. 1 at 8.) Plaintiff asserts that she never received a copy of the Co-Worker Alliance Handbook and AGC's "We Can Work It Out Program." (Pl. Aff. at ¶5.)

5. Plaintiff opposes arbitration, arguing that the alleged agreement is unenforceable due to a fee shifting provision, the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, does not apply to an employment contract, Defendants waived or abandoned any alleged right to arbitrate, the alleged

3

agreement does not apply to all claims in this case, the alleged agreement is unconscionable, the alleged agreement is illusory, and the alleged agreement is unsupported by consideration. Plaintiff requests a hearing to resolve disputed factual issues.

6. On September 7, 2000, I issued an Memorandum Opinion and Order denying the Motion to Compel Arbitration based on Tenth Circuit precedent holding that an arbitration agreement containing a cost-sharing provision was unenforceable. *Shankle v. B-G Maintenance Management of Colorado, Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999). However, I noted that:

> The United States Supreme Court has granted certiorari on the issue of whether an arbitration agreement that was silent on the issue of costs is unenforceable because Plaintiff's ability to vindicate statutory rights might be undermined. *See Green Tree Financial Corp. v. Randolph*, 120 S. Ct. 1552, 68 U.S.L.W. 3629 (U.S. Apr. 3, 2000) (No. 99-1235). Oral argument is scheduled for October 3, 2000. Defendant may raise the validity of the arbitration agreement in light of any change in the law.

(Mem.Op. Order at 5-6.)

7. On December 11, 2000, the United States Supreme Court issued its opinion, reversing the Eleventh Circuit and holding that a party seeking to invalidate an arbitration agreement due to prohibitive arbitration fees bears the burden of proof and that the possibility of such party incurring prohibitive costs is too speculative to invalidate an arbitration agreement where the record reveals only that the agreement is silent on the subject of arbitration costs. *Green Tree Financial Corp. v. Randolph*, 121 S.Ct. 513 (2000). I directed the parties to submit supplemental briefs on the ramifications of *Randolph* on the Motion to Compel Arbitration and subsequently withdrew my Memorandum Opinion and Order of September 7, 2000.

8. Unlike the agreement in *Randolph*, the purported agreement in this case is not silent

on the issues of costs, instead adopting the 1989 AAA procedures.  The 1989 AAA procedures require that the filing party pay a non-refundable administrative fee of $300.00 and $75.00 for each second or subsequent hearing and that all expenses of arbitration be borne equally by the parties, unless they agree otherwise or the arbitrator directs otherwise in the award.  (Pl. Ex. 2 at 10.)  Under *Randolph,* the party seeking to avoid arbitration must prove that "arbitration would be prohibitively expensive."  *Randolph*, 121 S.Ct. at 522.  Plaintiff has presented little evidence to indicate that arbitration would be prohibitively expensive.  AGC has represented to this court its willingness to pay all arbitration fees arising from this dispute.  Under these circumstances, the fee shifting provision does not invalidate the alleged arbitration agreement.  I will therefore turn to Plaintiff's additional arguments in opposition to arbitration.

9.    Congress' purpose in enacting the FAA was "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).  The FAA constitutes a congressional declaration of a liberal federal policy favoring arbitration agreements.  *See Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983).  Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Id.*, 460 U.S. at 24-25. Employment discrimination claims arising under federal statutes are subject to mandatory arbitration upon a valid agreement to arbitrate.  *See Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1487 (10th Cir. 1994).  The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.  *Gilmer*, 500 U.S. at 26.

10.    Before a federal judge may stay proceedings pending arbitration, however, he must

be satisfied that the issues involved in the suit are referable to arbitration under the agreement between the parties. *See* 9 U.S.C. § 3. "[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). As in any contract case, the parties' intent is controlling with regard to whether they agreed to arbitrate a particular dispute, and determining intent is a question of law for the court. *See Armijo v. Prudential Ins. Co.*, 72 F.3d 793, 797 (10th Cir. 1995) (citing *Mitsubishi*, 473 U.S. at 626). State law principles of contract formation govern the determination of whether an agreement to arbitrate has been reached. *See Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997).

11. Plaintiff argues that the FAA does not apply to contracts of employment, relying on Ninth Circuit authority recently overruled by the Supreme Court. The FAA excludes from coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The Ninth Circuit had held, based on this exclusion, that all contracts of employment were beyond the FAA's reach, regardless of whether the worker was engaged in transportation. *Circuit City Stores, Inc. v. Adams*, 194 F.3d 1070 (9th Cir.1999) (*reversed*). The Ninth Circuit's holding was at odds with the holding of other circuits, including the Tenth Circuit. The Tenth Circuit had held that the exception for "workers engaged in foreign or interstate commerce" does not encompass all employment contracts but instead only those of workers "engaged in the channels of interstate commerce." *See McWilliams v. Logicon*, 143 F.3d 573, 575-76 (10th Cir.1998).

12. On March 21, 2001, the Supreme Court determined that "the better interpretation is to construe the statute, as most Courts of Appeals have done, to confine the exemption to

6

transportation workers." *Circuit City Stores, Inc. v. Adams,* _____ S.Ct. _____, 2001 WL 273205 (Mar. 21, 2001). Because Plaintiff's employment did not involve transportation the exemption does not exclude her from coverage. *Id*. Therefore, the FAA applies.

13. Plaintiff contends that AGC waived any right to arbitrate. A party asserting waiver under an arbitration agreement bears a heavy burden of proof. *Peterson v. Shearson/American Express, Inc.*, 849 F.2d 464, 466 (10th Cir. 1998). A court should consider the following factors in determining whether a party has waived its right to arbitration: (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether judicial discovery procedures not available in arbitration had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party. *Metz v. Merrill Lynch, Pierce, Fenner and Smith*, 39 F.3d 1482, 1489 (10th Cir. 1994).

14. Consideration of these factors militates against arbitration. Defendants have submitted the affidavit of their attorney, Karen O. Strauss, stating that she did not notice the purported arbitration agreement until May 6 or 7, 2000. (Strauss Aff. ¶ 4.) When Defendants filed the Motion to Compel Arbitration, the case had only been pending for three months, formal discovery had not begun, no hearings had been held, and a trial date had not been set. Furthermore, Plaintiff has failed to show how she was prejudiced by the delay. Under these circumstances, Defendants did not waive any right to arbitrate.

15.     Plaintiff contends that the alleged arbitration agreement does not cover her claims for intentional infliction of emotional distress and prima facie tort and she did not agree to arbitrate with Defendant Winkler. Arbitration agreements are broadly construed with doubts being resolved in favor of coverage. *See Zink v. Merrill Lynch*, 13 F.3d 330, 332 (10th Cir. 1993). The express terms of the alleged arbitration agreement provide that all claims arising out of Plaintiff's employment are subject to arbitration. (Defs. Ex. B at 4.) All of the claims in the Complaint, including Plaintiff's state law claims and claims against Winkler, clearly arose out of her employment with AGC. Thus, all of the claims raised in Plaintiffs' complaint are subject to arbitration.

16.     Plaintiff next raises several contract theories, asserting that the alleged agreement is unenforceable because she is a native of the Phillippines, was not given explanation of the arbitration policy and procedures, and was not given any time to review the agreement before she was required to sign it. Generally, a party who executes a written contract with another is presumed to know the terms of the agreement, and to have agreed to each of its provisions in the absence of fraud, misrepresentation or other wrongful act of the contracting party. *Smith v. Price's Creameries*, 98 N.M. 541, 545, 650 P.2d 825, 829 (1982). Plaintiff's arguments in this regard are unavailing under the circumstances of this case.

17.     Plaintiff's level of sophistication and ability to understand English would be relevant only if she alleged Defendants wrongfully induced her to signing the agreement. *See Burchett v. Allied Concord Financial Corp.*, 74 N.M. 575, 578-579, 396 P.2d 186 (1964) (intelligence, business experience, and ability to understand English are among factors to consider where party allegedly tricked into signing agreement). However, Plaintiff does not assert that Defendants engaged in any misrepresentation regarding the alleged arbitration agreement or that she was unable to read it. Her

8

assertion that she was entitled to additional time to review the agreement is unsupported. Thus, Plaintiff's arguments are without merit.

18.     Plaintiff argues that the alleged agreement is illusory because it allows AGC to unilaterally change the terms. Agreements to arbitrate have been held invalid where they allow the employer to unilaterally change the rules. *See Hooters of America v. Phillips*, 173 F.3d 933, 939 (4th Cir. 1999). The Co-Worker Alliance Handbook states at one point that "I understand that this handbook superseded any and all prior handbooks and that except for employment at-will and the agreement to arbitrate as provided for in this handbook, AGC reserves the right to at any time change, delete, modify, or add to any of the provisions contained in this handbook at its sole discretion, by giving written notice to us." (Pl. Ex. 1 at p. 5.) However, at the back of the Co-Worker Alliance Handbook is an "Acknowledgment" stating that "I further understand that the Company reserves the right to amend, supplement, rescind or revise any policy, practice, or benefit described in this handbook – other than employment at-will provisions – as it deems appropriate." (Pl. Ex. 1 at 13.) AGC's Handbook contains inconsistent provisions as to whether it retained the right to unilaterally alter the agreement.

19.     A contract is ambiguous if it is reasonably and fairly susceptible to different constructions. *Monette v. Tinsley*, 126 N.M. 748, 751, 975 P.2d 361, 364 (Ct. App. 1999) (*citing Mark V, Inc. v. Mellekas*, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993)). Absent the presentation of other evidence, the trial court resolves ambiguity by interpreting the contract using accepted canons of construction and traditional rules of grammar and punctuation. *Monette*, 126 N.M. at 751, 975 P.2d at 364. Arbitration agreements must be broadly construed with doubts being resolved in favor of coverage. *Zink v. Merrill Lynch*, 13 F.3d at 332. In this case, even if the agreement were

ambiguous, it should be construed in favor of arbitration.

20. A related question is whether the agreement fails for lack of mutuality because it does not apply equally to both Plaintiff and AGC. The agreement lists causes of action that an employee would usually bring against an employer and utilizes the first person. Courts have invalidated arbitration agreements that exempt the employer from coverage. *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126 (7th Cir. 1997); *Zamprelli v. AGC*, CIV 00-0181 BB/RLP (D.N.M. Aug. 28 2001) (observing that an identical agreement was unenforceable because it suffered the same infirmity as that in *Gibson*). However, the agreement in *Gibson* contained an express provision exempting the employer from the requirements of the contract. *Gibson*, 121 F.3d at 1128. Conversely, the agreement in the instant case does not expressly exempt AGC. Therefore, Plaintiff's case is distinguished from *Gibson.*

21. The purported agreement may contain terms that favor AGC over Plaintiff. Under New Mexico law, imbalanced terms do not invalidate an arbitration agreement, unless they rise to the level of unconscionability. *Monette*, 126 N.M. at 751, 975 P.2d at 364. The threshold for unconscionability is very high, as the "terms must be such as, 'no man in his senses and not under delusion would make on the one hand, and ... no honest and fair man would accept on the other.' " *Guthmann v. La Vida Llena*, 103 N.M. 506, 511, 709 P.2d 675, 680 (1985) (*quoting In re Friedman*, 64 A.D.2d 70, 407 N.Y.S.2d 999, 1008 (1978)). The terms of the contract in the instant case do not rise to the level of unconscionability. While the terms may be more favorable to AGC, they do not invalidate the agreement.

22. Additionally, Plaintiff contends that the agreement is invalid because she never received a copy of the Co-Worker Alliance Handbook, and was not given a copy of the rules and

10

procedures governing arbitration. Courts have voided arbitration agreements where the plaintiff was not given a copy of the agreement or the governing rules and procedures. *Gibson*, 121 F.3d at 1131; *Hooters*, 39 F.Supp.2d at 614. Plaintiff signed a "New Co-Worker Authorization & Acknowledgment Form" acknowledging that Plaintiff received, understood and would comply with the Co-Worker Alliance Handbook and AGC's "We Can Work It Out Program." However, Plaintiff asserts that she never received a copy of the Co-Worker Alliance Handbook and AGC's "We Can Work It Out Program." (Pl. Aff. at ¶5.) This factual dispute should be resolved through an evidentiary hearing.

23. Finally, Plaintiff argues that the alleged agreement is unenforceable because it was not supported by consideration, contending that it was executed several months after she started working for AGC. Arbitration agreements have also been held invalid where the employee signed the agreement after she was hired. *Zamprelli v. American Golf Corp.*, CIV 00-0181 BB/RLP (Aug. 28, 2000) (*citing Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126 (7th Cir. 1997)). Plaintiff has submitted an affidavit in which she states that she started work with AGC on May 3, 1996, and that several months later, on July 25, 1996, she was instructed to sign a Policy Against Harassment in the Workplace. (Pl.'s Aff. at ¶¶ 2-4.) Plaintiff has also submitted a "Co-Worker Benefit Election and Change Form listing her date of hire as "5-10-96." (Pl.'s Aff. Ex. 1.) Defendants have submitted an affidavit from their attorney stating that Plaintiff applied for employment on July 24, 1996, signed the Policy Against Harassment on July 25, 1996, and was hired on July 31, 1996. (Strauss Reply Aff. at 5.) An evidentiary hearing is necessary to resolve this factual dispute.

24. Oral argument on these preliminary findings and an evidentiary hearing on paragraphs 22 and 23 of these preliminary findings shall be held on April 25, 2001 at 1:30 p.m. After the

evidentiary hearing, I will submit my final findings and recommendation to the District Judge. Upon service of my final proposed findings and recommendation, the parties will have ten days to file their objections pursuant to 28 U.S.C. §636(b)(1)(C). No objections are required to preserve any right until after receipt of my final proposed findings and recommendation, which will be issued after the evidentiary hearing.

**IT IS SO ORDERED.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**