## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

TERESITA J. DUMAIS,

        Plaintiff,

vs.                                            No. CIV 00-0255 MV/LAM

AMERICAN GOLF CORPORATION, a
Foreign Corporation d/b/a Paradise Hills Golf
Club, and WILLIAM WINKLER, an
individual,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment on Affirmative Defenses **[Doc. Nos. 91 & 92]**, filed March 31, 2003; Defendants' Motion for Summary Judgment **[Doc. Nos. 89 & 90]**, filed March 31, 2003; Defendants' Motion to Strike Portions of Plaintiff's Affidavit and Deposition Testimony **[Doc. Nos. 103 & 104]**, filed April 21, 2003; and Defendants' Motion to Supplement Motion for Summary Judgment **[Doc. Nos. 114 & 115]**, filed June 25, 2002.  The Court, having considered the motions, briefs, relevant law and being otherwise fully informed, finds that the motions will be **DENIED in part** and **GRANTED in part, as set forth herein.**

### BACKGROUND

The factual findings proposed by Magistrate Judge Martinez and adopted by this Court through its Order of June 14, 2001 **[Doc. No. 71]** indicate that Plaintiff Teresita Dumais began

working as a service employee at the Paradise Hills Golf Club on May 3, 1996.  Roughly two months after Ms. Dumais commenced her employment, Defendant American Golf Corporation (AGC) assumed ownership of Paradise Hills.  In July 1996, Ms. Dumais was promoted from her position as waitstaff to that of banquet captain.  Also around July 1996, Ms. Dumais completed and signed a "New Co-Worker Authorization & Acknowledgment Form" and a "Policy Against Harassment in the Workplace/'We Can Work It Out'" form.

Starting in the fall of 1998, Defendant William Winkler became General Manager of Paradise Hills.  Ms. Dumais alleges that Mr. Winkler subjected her to a barrage of sexual harassment that included sexually suggestive comments, sexual propositions and offensive touching during her employment.  On July 2, 1999, Ms. Dumais faxed a resignation letter to the AGC home office citing the alleged sexual harassment as well as additional purportedly unprofessional behavior by Mr. Winkler as having forced her to end her employment with Paradise Hills as of July 10, 1999.  In the letter, Ms. Dumais further indicated her intent to file a complaint with the Equal Employment Opportunity Commission (EEOC) concerning the harassment.  On July 7, 1999, Mr. Winkler had a confrontation with Ms. Dumais, in which he allegedly expressed anger about the letter and told Ms. Dumais to pack her things at the end of that day.

In July 1999, Ms. Dumais filed a complaint with the EEOC.  She received a right to sue letter from the EEOC on or about December 2, 1999 and initiated the instant suit on February 22, 2000.

In her complaint, Ms. Dumais brings claims of unlawful sexual harassment and constructive discharge pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C.

§ 2000e, and a claim of retaliatory discharge under state law against AGC.  In the alternate, Ms. Dumais seeks damages for a prima facie tort against both AGC and Mr. Winkler.  Finally, Ms. Dumais seeks redress for intentional infliction of emotional distress.

On March 31, 2003 Defendants filed a Motion for Summary Judgment **[Doc. Nos. 89 & 90]** and an additional Motion for Summary Judgment on Affirmative Defenses **[Doc. Nos. 91 & 92]**.  Defendants also have filed a Motion to Strike **[Doc. Nos. 103 & 104]** parts of the affidavit and deposition testimony  relied upon by Plaintiff in her response to Defendant's summary judgment motions.  On June 25, 2002, Defendants filed a Motion to Supplement Motions for Summary Judgment **[Doc. Nos. 114 & 115]**.  The Court will address each of these motions herein.

## DISCUSSION

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting FED. R. CIV. P. 1).  Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the nonmoving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories,

and admissions on file,' designate specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324.  "Where the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the

motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United*

*States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by

demonstrating to the district court that there is an absence of evidence to support the nonmoving

party's case.  *Celotex*, 477 U.S. at 325.  In such a situation, the moving party is entitled to

judgment as a matter of law "because the nonmoving party has failed to make a sufficient showing

on an essential element of her case with respect to which she has the burden of proof."  *Id.* at 322.

A.     **Motion to Strike Portions of Plaintiff's Affidavit and Deposition Testimony**

**[Doc. Nos. 103 & 104]**

1.     *Contradictory statements*

Defendants cites five portions of Plaintiff's Affidavit as contradicting prior deposition

testimony by Plaintiff and requests that those portions be stricken from the record.  (Defs.' Mot.

to Strike at 3-4.)  However, the passages of the Affidavit to which Defendants have objected are

not necessarily inconsistent with the prior deposition testimony of Plaintiff.  Defendants have

reworded the relevant statements and drawn inferences that are not necessary based on what the

Affidavit and deposition testimony actually say.  Accordingly, Defendants' motion to strike the

purportedly contradictory statements will be denied.

### 2.      *Inadmissible statements in affidavit and deposition testimony*

Defendants misunderstand the standard for admissible evidence on a summary judgment motion.  Affidavits submitted for consideration on a summary judgment motion are adequate so long as they are sworn to on personal knowledge, state specific facts that are admissible as evidence at trial, and are provided by a competent affiant.  FED. R. CIV. P. 56(e).  The Court notes that Defendants misstate the holdings of cases in arguing that Plaintiff's affidavit and deposition testimony are inadmissible because they are "self-serving."  The cases on which Defendants rely discuss the rule against considering conclusory or unsubstantiated allegations contained in *pleadings* that are not supported by affidavit, deposition or other supporting evidence; they do not hold that affidavits always must be supported by other documentary evidence to be properly considered on a motion for summary judgment.  *See, e.g., Philips v. Calhoun.,* 956 F.2d 949, 951 n.3 (10th Cir. 1992) (nonmovant cannot rest on pleadings unsubstantiated by affidavit or other evidence).  Defendants seem to think that any time Plaintiff has made a statement that helps her case or injures their position, it is "self-serving" so as to be inadmissible.  Clearly, this is not what renders testimony inadmissible under relevant case law.

Defendants also object to portions of Plaintiff's affidavit and Plaintiff's deposition testimony on the grounds that the statements contained therein are hearsay, lack foundation, conclusory allegations and irrelevant.  Because of the length of the deposition testimony and of the sheer number of objections made by Defendants in their Motion to Strike, ruling on this motion would draw on as much of the Court's time and resources as would ruling on the actual motions for summary judgment.  Moreover, the facts cited in this Opinion and that are necessary for ruling on the summary judgment motions have been taken from evidence that the Court has

determined is appropriate for consideration on such motions.  Since the evidentiary objections contained in Defendants' motion to strike extend to materials not relied upon by this Court in ruling on the summary judgment motions, the Court will deny those objections as moot.  To the extent the Court's discussion of the summary judgment motions does rely on evidence to whose admissibility Defendants have objected, the Court finds those portions of Plaintiff's affidavit and deposition admissible under the standard set forth in Rule 56(e) and, accordingly, denies Defendant's motion to strike.[1]

### B.  Motion for Summary Judgment on Affirmative Defenses [Doc. Nos. 91 & 92]

In *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), the Supreme Court clarified that, in Title VII sexual harassment cases, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee."  *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.  If no tangible employment action was taken against the employee subjected to the harassment, the defendant employer may raise an affirmative defense to liability by proving by a preponderance "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.  Notably, this affirmative defense is

---

[1]Plaintiff, in her response, includes a single-sentence request for sanctions against Defendants, arguing that the motion to strike is frivolous.  While the Court agrees with Plaintiff's analysis that most of the passages sought to be stricken by Defendants are clearly admissible, the Court will not use its inherent power to sanction Defendants.

unavailable "when the supervisor's harassment culminates in a tangible employment action, such

as discharge, demotion, or undesirable reassignment." *Ellerth*, 524 U.S. at 765; *Faragher*, 524

U.S. at 808.

In the instant suit, the parties disagree over whether any tangible employment action was

taken against Plaintiff and, therefore, whether Defendant AGC may invoke the *Ellerth-Faragher*

affirmative defense.  Plaintiff argues that Defendant has failed to meet its burden of proving that

she did not suffer any tangible employment action.  Specifically, Plaintiff cites her constructive

discharge as well as her "actual termination" (that is, when Mr. Winkler called Plaintiff into his

office and fired her before the date her resignation went into effect) as instances of the tangible

employment action.

In *Ellerth*, the Supreme Court drew on decisions from the Courts of Appeals in stating

that "tangible employment action constitutes a significant change in employment status, such as

hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a

decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761.  Any act by the

employer that constitutes a "materially adverse change in the terms and conditions of

employment" will qualify as adverse or tangible employment action under *Ellerth* and *Faragher*.

*Mallinson-Montague v. Pocrnick*, 224 F.3d 1224, 1231 (10th Cir. 2000) (quoting *Crady v.

Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)).  Ultimately, however,

the Tenth Circuit has adopted a "case-by-case approach to determining whether a given

employment action is 'adverse.'" *Jeffries v. Kansas*, 147 F.3d 1220, 1232 (10th Cir. 1998).

That the Tenth Circuit acknowledges constructive discharge is one form of tangible

employment action under *Ellerth* and *Faragher* is evident from its holding in *Mallinson-*

*Montague*.  In that case, the court rejected the defendant's contention that the only injury

sufficiently adverse or tangible to preclude the *Ellerth-Faragher* affirmative defense was

constructive discharge, concluding instead that harms of lesser magnitude constituted "tangible

employment action" as contemplated by *Ellerth* and *Faragher*.  *Mallinson-Montague*, 224 F.3d at

1231-32.  In other words, the Tenth Circuit implicitly found that the existence of constructive

discharge was one, but not the only reason why a defendant could be prevented from raising the

*Ellerth-Faragher* affirmative defense.  *Accord, Suders v. Easton*, 325 F.3d 432, 454-55 (3d Cir.

2003); *EEOC v. Univ. of Chi. Hosps.,* 276 F.3d 326, 331 (7th Cir. 2002); *Jackson v. Ark. Dep't*

*of Educ., Vocational & Technical Educ. Div.,* 272 F.3d 1020, 1027 (8th Cir. 2001).  *But see*

*Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 294-95 (2d Cir. 1999) (concluding

constructive discharge is not tangible employment action under *Ellerth* and *Faragher*).

      The Tenth Circuit has held that constructive discharge occurs when an employer "makes

or allows the employee's working conditions to become so intolerable that the employee has no

other choice but to quit."  *Irving v. Dubuque Packing Co.*, 689 F.2d 170, 172 (10th Cir. 1982),

*repudiated on other grounds by Koch v. City of Hutchinson*, 814 F.2d 1489, 1495 (10th Cir.

1987).  Whether the conditions of employment were so intolerable must be evaluated under an

objective standard; the "plaintiff's subjective views of the situation are irrelevant."  *Sanchez v.*

*Denver Pub. Schs.*, 164 F.3d 527, 534 (10th Cir. 1998) (quotations omitted).  The decisionmaker

must ask if the "working conditions [were] so difficult that a reasonable person in the employee's

position would [have felt] compelled to resign."  *Id.* (quotations omitted).  "The question is not

whether working conditions ... were difficult or unpleasant," but whether the plaintiff, "at the time

of [her] resignation[], had the opportunity to make a free choice regarding [her] employment

relationship." *Yearous v. Niobrara County Mem'l Hosp.*, 128 F.3d 1351, 1357 (10th Cir. 1997).

Additionally, the Tenth Circuit has concluded that "a finding that [a plaintiff] was constructively

discharged must be justified by the existence of certain aggravating factors," *Irving*, 689 F.2d at

173 (quotations omitted).

Plaintiff alleges that "[a]lmost from the time he became General Manager, Winkler

subjected [her] to a nearly constant barrage of sexually suggestive comments, sexual propositions,

frequent offensive touching and other offensive and abusive conduct."  (Compl. ¶ 10.)  Plaintiff

testified at her deposition that, among other things, Mr. Winkler asked her twice to have wine or

dinner with him, adding that he was "good in bed" (Pl.'s Depo. of 11/9/00 at 34, 172); rubbed his

crotch against her hip at least once (Pl.'s Depo. of 11/9/00 at 35); petted her leg (Pl.'s Depo. of

11/9/00 at 37, 173-75); once touched her buttocks (Pl.'s Depo. of 11/9/00 at 38, 175-76);

brushed against her breasts (Pl.'s Depo. of 11/9/00 at 42, 171); hugged her in an offensive manner

four times (Pl.'s Depo. of 11/9/00 at 114-122, 182); and touched or pulled at her bra strap twice

(Pl.'s Depo. of 11/9/00 at 177-78).  Plaintiff also has alleged that Mr. Winkler stroked her hair

and commented on her appearance several times, stating that she would "look better with bigger

'boobs.'" (Pl.'s Resp. to First Set of Special Interrogs. at 2).  In her deposition, Plaintiff further

alleged that she spoke to Mr. Winkler about some of the behavior she found offensive - such as

the hugs and some of his sexually suggestive statements - but that the harassment persisted.

In addition to this alleged gender-based harassment, Plaintiff contends that Mr. Winkler

engaged in other conduct that made the conditions of her employment intolerable.  Plaintiff states

that when she complained to Mr. Winkler of inappropriate behavior at the hands of another fellow

employee and suggested calling a toll-free number identified by AGC for reporting incidents of

-9-

harassment, Winkler purportedly stated she could "pack her bag" if she called the number.  (Pl.'s

Depo. of 11/9/00 at 170.)  In her EEOC charge, Plaintiff described the harassment as also having

consisted of "(1) threatening me with job loss for working three hours longer than scheduled one

day (others are allowed to work overtime whenever they want[)]; (2) not hiring enough staff to

do the work so I have to work without breaks; (3) making me reimburse the company when the

cash drawer is short." (Pl.'s EEOC Charge, Ex. B to Def.'s Rep. [Doc. No. 100].)  Defendant

AGC points to evidence suggesting that Mr. Winkler's threats about job loss were not baseless in

that Plaintiff had been warned or reprimanded about working too many hours on more than one

occasion.  At most, however, this evidence only creates a factual dispute concerning these

allegations.

Defendant first argues that the Court lacks jurisdiction to hear Plaintiff's constructive

discharge claim because she failed to include that claim in her EEOC charge.  In the section titled,

"Statement of Harm," Plaintiff wrote, "I was sexually harassed and harassed by the General

Manager beginning in September 1998.  On 7/2/99 I was forced to resign effective 7/10/99

because of the workplace harassment."  (Pl.'s EEOC Charge, Ex. B to Def.'s Rep. [Doc. No.

100].)  While Plaintiff did not use the words "constructive discharge" in her EEOC complaint, she

did state that her resignation was prompted by the alleged sexual harassment and that is the crux

of her constructive discharge claim.  Moreover, the cases on which Defendants rely to support

their claim that Plaintiff failed to include constructive discharge in her EEOC complaint and

therefore failed to exhaust administrative remedies before pursuing that claim in court, actually

work against their position.  Defendant invokes cases like *Jones v. Runyon*, 91 F.3d 1398 (10th

Cir. 1996), in which courts have dismissed claims of employment discrimination for failure to

exhaust administrative remedies because the claims were based on incidents not enumerated in the plaintiff's EEOC charge.  Applying this rule to the case at bar, the Court finds no defect in Plaintiff's complaint because the claim of constructive discharge is based on the incidents of harassment specifically enumerated in Plaintiff's EEOC charge.  Thus the Court finds it has jurisdiction to hear Plaintiff's Complaint in its entirety.

As a substantive matter, Defendant contends that Plaintiff was not constructively discharged because she never complained of the harassment before resigning and because the resignation was voluntarily undertaken.  First, whether Plaintiff complained to her employer about the alleged harassment before resigning is immaterial to determining whether she was constructively discharged.  The Tenth Circuit made clear that, "'[t]o the extent that [the employer] denies a conscious design to force [the employee] to resign, ... an employer's subjective intent is irrelevant.'"  *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir. 1986) (quoting *Clark v. Marsh*, 665 F.2d 1168, 1175 n.8 (D.C. Cir. 1981)) (alterations in original) . For purposes of the constructive discharge analysis, the question is only whether a reasonable person would have felt forced to quit because of gender-based intolerable working conditions. Second, "[t]o determine whether a jury question exists as to the voluntariness of Plaintiff['s] ... resignation[], we consider the totality of the circumstances under an objective standard." *Yearous v. Niobrara County Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997).

Looking at the evidence in the light most favorable to Plaintiff, Defendant has not shown a total lack of evidence on the question of constructive discharge.  This is not a case where it is apparent, beyond doubt, that Plaintiff can prove no facts on her claim that she effectively was forced to resign because of the sexual harassment.  Plaintiff has set forth allegations of pervasive

-11-

sexual harassment and aggravating circumstances that could make employment at the Paradise

Hills Golf Club so objectively intolerable that an individual would feel compelled to resign.  Thus,

because Defendant has not established that there was no constructive discharge, it has not shown

that no adverse employment action was taken.  Accordingly, Defendant is precluded from

invoking the *Ellerth-Faragher* affirmative defense, and the Motion for Summary Judgment on the

Affirmative Defenses must be denied.

**C.     Motion for Summary Judgment [Doc. Nos. 89 & 90]**

By separate motion, Defendants seek summary judgment on each of Plaintiff's claims for

reasons other than the affirmative defense discussed above.  The Court will address each

contention in turn.[2]

**1.     *Count I - Sexual Harassment under Title VII***

"For a hostile environment claim to survive a summary judgment motion, a plaintiff must

show that a rational jury could find that the workplace is permeated with discriminatory

intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of

the victim's employment and create an abusive working environment."  *Penry v. Fed. Home Loan*

*Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998) (quotations omitted).  "While the plaintiff

must make a showing that the environment was both objectively and subjectively hostile, she need

not demonstrate psychological harm, nor is she required to show that her work suffered as a result

_____

[2]At the outset, the Court notes that Defendants have included in their motion a request for
summary judgment on Plaintiff's Title VII retaliation claim.  Although both parties offer legal
briefing and argument on this issue, Plaintiff has not brought such a claim in her complaint.  The
five counts charged therein are for (1) sexual harassment in violation of Title VII, (2) constructive
discharge in violation of Title VII, (3) retaliatory discharge under state law, (4) intentional
infliction of emotional distress, and (5) in the alternate, prima facie tort.

of the harassment." *Id.*  In determining whether the work environment was "hostile" or

"abusive," a court must look to the totality of the circumstances, "includ[ing] the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work

performance." *O'Shea v. Yellow Tech. Servs., Inc.,* 185 F.3d 1093, 1098 (10th Cir. 1999)

(quotations omitted) (alteration in original).  The Supreme Court has noted that "simple teasing,

offhand comments, and isolated incidents (unless extremely serious) will not amount to

discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca*

*Raton*, 524 U.S. 775, 788 (1998) (quotations and citation omitted).  The Tenth Circuit has

emphasized that this "severity and pervasiveness evaluation is particularly unsuited for summary

judgment because it is 'quintessentially a question of fact.'" *O'Shea*, 185 F.3d at 1098 (quoting

*Beardsley v. Webb*, 30 F.3d 524, 530 (4th Cir. 1994)).

        Defendants first argue that Plaintiff's Title VII claim must be dismissed because the

alleged harassment was not sufficiently pervasive or severe to render the workplace objectively

hostile.  Defendants compare the facts alleged here with those of other cases in which the Tenth

Circuit has ruled on the severity and pervasiveness issue.  "Although we routinely compare the

facts of different cases to each other to evaluate the relative severity or pervasiveness of the

conduct, our precedents require us to examine the specific context in which the conduct occurred

on a case-by-case basis." *O'Shea*, 185 F.3d at 1097 n.2.  Plaintiff has alleged that she was

subjected to ten months of verbal and physical gender-based harassment.  The alleged verbal

harassment ranged from direct propositions to comments about Plaintiff's physique to indirect

gender-related references to Plaintiff's sex life and personal affairs.  The purported physical

harassment consists of offensive physical contact on at least about twelve separate occasions.

Looking to the totality of the circumstances, it is apparent that these alleged incidents occurred

with a frequency and range of intensity that would impair a person's ability to work

professionally.  Furthermore, at least part of the alleged conduct of Mr. Winkler would be

humiliating to a reasonable person and not only "offensive" in nature.  The harassment described

by Plaintiff easily goes beyond the "mere utterance of an epithet, joke, or inappropriate taunt" that

the Supreme Court has stated is unactionable under Title VII.  *Oncale v. Sundowner Offshore*

*Serv., Inc.,* 523 U.S. 75, 81-82 (1998).

Defendants also rely on statements of some of Plaintiff's co-workers, all of whom vouch

for Mr. Winkler's respectful demeanor at work.  However, the fact that other workers at Paradise

Hills have attested to Mr. Winkler's decency does not negate the possibility that he acted

inappropriately outside their presence or with Plaintiff.  That these employees do not believe

Plaintiff's allegations to be true is inadequate grounds for granting summary judgment to

Defendants on this claim.  The Court does not find that the evidence is insufficient, as a matter of

law, to prove that environment surrounding Plaintiff's employment at Paradise Hills was

objectively hostile or abusive.

Defendants additionally seek summary judgment on the grounds that there is no evidence

indicating Plaintiff subjectively found the environment to be hostile.  In support, Defendants state

that Plaintiff never complained about the harassment until after she left, that Plaintiff never

complained to anyone about Mr. Winkler (other than objecting to the fact that Mr. Winkler would

not permit her to work as many hours as she liked), and that Plaintiff herself violated the

workplace's anti-harassment policy.  That Plaintiff may not have spoken up about the harassment

-14-

until after leaving does not mean she found the work environment intolerable while she was there. Moreover, Plaintiff has testified that she did tell Mr. Winkler to stop harassing her and stopped him from hugging her when she found it inappropriate or threatening.  As for Defendants' allegations that Plaintiff herself engaged in inappropriate behavior, the Court reminds Defendants that Plaintiff is not accused of having created an abusive work environment.  To the extent Defendants claim that Plaintiff herself commented on her appearance at work to her co-workers, Plaintiff disputes having made such statements.  More importantly, however, the possibility that Plaintiff made comments about her own appearance is irrelevant to whether she personally felt threatened or humiliated when her superior made inappropriate and harassing comments to her and when he engaged in objectionable, sexually harassing physical contact.  Thus, the Court concludes that Defendants have not met their burden for summary judgment on the question of whether Plaintiff found her workplace to be subjectively hostile or abusive.

### 2.      *Count II - Constructive Discharge under Title VII*

Defendants also seek dismissal of Plaintiff's constructive discharge claim on the grounds that Plaintiff cannot demonstrate, as a matter of law, that her conditions of employment were objectively intolerable or that her resignation was involuntary.  Defendants rely on the same arguments made in the context of their Motion for Summary Judgment on Affirmative Defenses, namely, that Plaintiff's resignation was voluntary and that Plaintiff failed to exhaust administrative remedies on her claim of constructive discharge.  For the same reasons outlined in Section A *supra*, Defendants are not entitled to summary judgment on Count II of Plaintiff's complaint.

### 3.      *Count III - Retaliatory Discharge*

The tort of retaliatory discharge was first recognized in New Mexico as a narrow

-15-

exception to the traditional rule governing discharge of at-will employees in *Vigil v. Arzola*, 699 P.2d 613, 617-21 (N.M. Ct. App. 1983), *rev'd in part on other grounds*, 687 P.2d 1038 (N.M. Ct. App. 1984), *overruled in part on other grounds by Chavez v. Manville Prods. Corp.*, 777 P.2d 371, 377 (N.M. 1989).  "[F]or employees to recover under a retaliatory-discharge claim, they must demonstrate that they were discharged because they performed acts that public policy has authorized or would encourage, or because they refused to do something required by an employer that public policy would condemn."  *Garrity v. Overland Sheepskin Co. of Taos*, 1996-NMSC-032, ¶ 15, 917 P.2d 1382, 1386 (citing *Vigil*, 699 P.2d at 620).  Additionally, "employees must show a causal connection between their actions and their subsequent discharge."  *Id.*

Defendants contend that Plaintiff cannot show (a) she was actually discharged by American Golf, (b) assuming she was discharged, that the termination resulted from her participation in conduct authorized or encouraged by public policy, and (c) that any of her actions before termination furthered the public interest or that AGC violated any clear public policy mandate.  Plaintiff faxed a letter of resignation to AGC's home office on July 2, 1999 stating that she would end her employment with AGC on July 10, 1999.  In the letter, Plaintiff cited several reasons for her resignation and, among other things, stating that "Mr. Winkler behaviour [sic], unwelcome touching, hugging, spur of the moment 'threats' of job loss without prior writing documentation or counceling [sic], looks of rage, with me and other employees and unreported to the home office activities of work place harrassment [sic] forced me to report this unprofessional behavior to the local EEOC office."  (Pl.'s Resignation Letter, Ex. 9 to Pl.'s Resp. [Doc. No. 98].)  Plaintiff contends that on July 7, 1999, Mr. Winkler called her into his office, got angry with

-16-

her for having submitted the resignation letter, told her she could pack her things as of that day, and "said that he would make sure that [she] would not work in this town again." (Dumais Aff. ¶ 21.) To the extent the evidence suggests Mr. Winkler fired her a few days before her resignation took effect because he was angered by her announcement that she would be filing an EEOC complaint, the evidence is sufficient to support a finding of retaliatory discharge under state law.

In *Gandy v. Wal-Mart Stores, Inc.,* 872 P.2d 859, 863 (N.M. 1994), the New Mexico Supreme Court held that a tort claim for retaliatory discharge may be premised on a violation of the public policy mandates of the state's Human Rights Act §§ 28-1-1 to -15 NMSA 1978 (repealed effective July 1, 2006). In that case, the plaintiff had filed a discrimination complaint against her employer with the Human Rights Division of the New Mexico Department of Labor. Shortly after, she was fired, purportedly in retaliation for having filed the complaint. The plaintiff then filed suit alleging, among other things, retaliatory discharge. On appeal, the New Mexico Supreme Court affirmed that the plaintiff did have a cause of action against her employer, in that her claim of retaliatory discharge was based on alleged retaliation for having filed a complaint of discrimination against the employer. This Court is faced with a comparable claim in the case at bar. Under the facts presented so far, Plaintiff claims she was fired by Mr. Winkler after she submitted a letter voicing her intent to file a sexual harassment claim with the EEOC and that Mr. Winkler referenced the letter when he called her into his office to terminate her employment, before her resignation would have taken effect. Viewing the evidence and all reasonable inferences in the light most favorable to Plaintiff, the Court finds enough evidence to deny Defendants' motion for summary judgment on this claim.

### 4.    *Count IV - Intentional Infliction of Emotional Distress*

In evaluating claims for intentional infliction of emotional distress, New Mexico courts have adopted the approach taken by the RESTATEMENT (SECOND) OF TORTS § 46 (1965).  *Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 2002-NMSC-004, ¶ 25, 41 P.3d 333, 342.  To establish such a claim, a plaintiff must show that "(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress."  *Id.* (quotations omitted).

Defendants argue that Plaintiff has not presented evidence of "severe" emotional distress. In determining whether the injury to the plaintiff is adequate for a claim of intentional infliction of emotional distress, courts are to consider whether "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances." *Jaynes v. Strong-Thorne Mortuary, Inc.*, 1998-NMSC-004, ¶ 20, 954 P.2d 45, 50 (quotations omitted).  "In other words, the distress must be 'so severe that no reasonable [person] could be expected to endure it.'"  *Trujillo*, 41 P.3d at 343 (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. j.) (alteration in original).

Plaintiff testified at her deposition that she endured nearly daily stomach aches, frequent headaches, severe trembling all over her body and sexual dysfunction as a result of the purported harassment, but did not seek medical attention for her symptoms until December 2000 (Pl.'s Depo. of 11/9/00 at 220-21; Pl.'s Depo. of 3/5/03 at 270, 279.)  Plaintiff was treated by nurse practitioners and a psychiatrist for her trembling and pain.  (Pl.'s Depo. of 3/5/03 at 267-81.) Courts have rejected claims for intentional infliction of emotional distress where the claimant has

expressed comparable or slightly greater mental and physical injury.  For example, in *Trujillo*, the New Mexico Supreme Court concluded that evidence of plaintiff's depression (including prescription of Prozac) and of his erratic sleeping and eating habits after the alleged harassment were legally insufficient to support such a claim.  *Trujillo*, 41 P.3d at 343; *see also, Gioia v. Pinkerton's Inc.*, 194 F.Supp.2d 1207, 1220 (D.N.M. 2002) (granting defendant summary judgment on intentional infliction of emotional distress claim partly because plaintiff's testimony of severe emotional distress lacked factual support; "Plaintiff did not visit a doctor or mental health specialist; he was not prescribed any medication; and he apparently had no trouble going back to work, as he found a new, higher-paying job with a car dealership days after a two-week visit to his brother in California.")  In light of the high evidentiary showing required for this element of the tort claim, the Court finds that Plaintiff has not presented sufficient evidence to survive a motion for summary judgment.

### 5.    *Count V - Alternative clam of Prima Facie Tort*

Prima facie tort was first recognized as a viable cause of action in New Mexico in *Schmitz v. Smentowski*, 785 P.2d 726, 734 (N.M. 1990).  To prevail on such a claim, a plaintiff must prove the existence of (a) an intentional, lawful act by the defendant, (b) an intent to injure the plaintiff, (c) injury to the plaintiff that was proximately caused by defendant's act, and (d) insufficient or lack of justification for the act.  *Id.*  Contrary to Defendants' misstatement of the law, "[p]rima facie tort may be pleaded in the alternative."  *Aetna Finance Co. v. Gaither*, 880 P.2d 857, 860 (N.M. 1994) (quoting *Schmitz*, 785 P.2d at 396).

Although Defendants argue that Plaintiff has not alleged facts to meet the first element, in her complaint Plaintiff clearly identifies that the intentional, lawful conduct as Mr. Winkler's

actions toward Plaintiff, in the event they are found to be legal and not violative of Title VII.

(Compl. ¶ 46.)  Plaintiff has not, however, provided sufficient evidence on the element of intent.

In *Portales Nat'l Bank v. Ribble*, 2003-NMCA-093, ¶ 8, 75 P.3d 838, 841, the New Mexico

court of appeals explained that, for a successful prima facie tort claim,

> [n]ot only must the act be intentional, but the defendant must know that the act
> was wrong when he or she did it.  The burden is on the plaintiff to make such a
> showing, which must be of an *actual intention to injure*, *not merely an intent to do
> the act* which may result in the claimed injury.  [*Lexington Ins. Co. v. Rummel*,
> 945 P.2d 992, 995 (N.M. 1997).]  Plaintiff's showing must evince more than a
> mere insensitivity towards the injured party.

Plaintiff has not offered a response to Defendants' arguments concerning her prima facie tort

claim, so the Court is without benefit of factual or legal argument.  As such, on the issue of intent,

the Court only has Plaintiff's summary allegations from her complaint that Mr. Winkler's actions

"were intended to cause harm to Dumais" or that Mr. Winkler "knew it was reasonably certain

that Dumais would be harmed by his conduct." (Compl. ¶ 46.)  In light of the evidentiary

requirements for the intent element of a prima facie tort claim, the Court finds the conclusory

allegations provided in Plaintiff's complaint legally insufficient to survive Defendants' summary

judgment motion on this count.


## CONCLUSION

   **IT IS THEREFORE ORDERED** that Defendants' Motion to Strike Portions of

Plaintiff's Affidavit and Deposition Testimony **[Doc. Nos. 103 & 104]** is hereby **DENIED.**

Defendant's Motion for Summary Judgment on Affirmative Defenses **[Doc. Nos. 91 & 92]** is

hereby **DENIED**.  Defendants' Motion for Summary Judgment **[Doc. Nos. 89 & 90]** is **DENIED**

as to Counts I, II and III of Plaintiff's Complaint and **GRANTED** as to Counts IV and V.

Defendants' Motion to Supplement Motion for Summary Judgment **[Doc. Nos. 114 & 115]** is

**DENIED as moot**.


Dated this 24th day of October, 2003.

_____
MARTHA VAZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE


Attorney for Plaintiff:
Christopher M. Moody

Attorney for Defendant:
Martin R. Esquivel
Karen O. Strauss